IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff | : |
| v. | : Civil Action NO. |
| | : 05-0453 |
| JEFF THOMAS ALLEN and | : |
| JAMES BARLOW SMITH, | : |
| Defendants | : |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant James Barlow Smith by and through his counsel, Philip A. Ignelzi, of the firm Ogg, Cordes, Murphy & Ignelzi, L.L.P., hereby answer Plaintiff Securities and Exchange Commission's Complaint as follows:

1. Denied as stated. It is admitted only that at various times Jeffrey Thomas Allen ("Allen") was President, CEO and Chief Investment Officer of Advanced Investment Management, Inc. ("AIM") and that James Barlow Smith ("Smith") was AIM's Vice President of Equity Trading. The remaining allegations contained in paragraph 1 of the Complaint, if any, are denied and strict proof demanded.

2. Denied as stated. It is admitted only that from April through July 2002, the Standard and Poor's 500 Index (S&P) dropped approximately 29%. All other allegations contained in paragraph 2 of the Complaint are denied and strict proof demanded.

3. Denied.

4. Denied.

5. Denied.

6. The allegations of paragraph 6 contain conclusions of law to which no response is necessary. To the extent a response is required, the allegations are denied.

7. The allegations of paragraph 7 contain conclusions of law to which no response is necessary. To the extent a response is required, the allegations are denied. It is specifically denied that this court has jurisdiction.

8. The allegations of paragraph 8 contain conclusions of law to which no response is necessary. To the extent a response is required, the allegations are denied. It is specifically denied that Smith committed any violations.

9. Denied as stated. Allen, along with other founding partners of the firm, directed the activities of the firm. All other allegations of paragraph 9 of the Complaint are denied and strict proof demanded.

10. Denied as stated. It is admitted only that Smith is a resident of Saxonburg, Pennsylvania, was vice-president of AIM Equity Trading Department and served as AIM Equity Trader. Smith reported to Allen, as well as other founding partners of the firm. All other allegations of paragraph 10 of the Complaint are denied and strict proof demanded.

11. Denied as stated. Allen, along with other founding partners of the firm, made investment decisions. Smith was an equity trader who followed instructions from Allen and other founding partners of the firm who were in charge of various portfolios. All other allegations of paragraph 11 of the Complaint are denied and strict proof demanded.

12. Admitted.

13. Denied as stated. It is admitted only that AIM acted at times through Allen and Smith, as well as other partners and employees. To the extent Paragraph 13 suggests that AIM had no other employees, officers, or agents, who performed any ministerial or decision making tasks, it is specifically denied. The remaining allegations contained in paragraph 13 of the Complaint are denied and strict proof is demanded.

14. Denied as stated. After reasonable inquiry, Smith is unable to respond to the allegations of paragraph 14 because Smith was not involved in the marketing of AIM and was not an investment advisor to the portfolio, nor did he have any primary client contact. Smith executed trades as directed by portfolio managers at AIM. Therefore, all allegations contained in paragraph 14 of the Complaint are denied and strict proof demanded.

15. Denied as stated. Smith was neither a marketer of AIM nor an investment advisor to the portfolio. Smith executed trades as directed by portfolio managers at AIM. He had no primary contacts with any clients. After reasonable investigation, Smith has insufficient knowledge to admit or deny allegations concerning the specifics of any agreements between AIM and its clients. Therefore, the allegations contained in paragraph 15 of the Complaint are denied.

16. Denied as stated. While paragraph 16 generally describes the concepts of market exposure and leverage, Smith was neither a marketer of AIM nor an investment advisor to the portfolio. Smith executed trades as directed by portfolio managers at AIM. He had no primary contacts with clients. After reasonable investigation, Smith has insufficient knowledge to admit or deny allegations concerning

the specifics of any agreements between AIM and its clients. Therefore, all allegations contained in paragraph 16 of the Complaint are denied and strict proof demanded.

17. Denied. Smith was neither a marketer of AIM nor an investment advisor to the portfolio and had no primary contact with clients. As such, Smith has insufficient information and knowledge to admit or deny the allegations contained in paragraph 17 of the Complaint. Therefore, all allegations contained in paragraph 17 of the Complaint are denied and strict proof demanded.

18. Denied. Smith was neither a marketer of AIM nor an investment advisor to the portfolio and had no primary contact with clients. As such, Smith has insufficient information and knowledge to admit or deny the allegations contained in paragraph 18 of the Complaint. Therefore, all allegations contained in paragraph 18 of the Complaint are denied and strict proof demanded.

19. Denied as stated. It is specifically denied that non-core trading was used by Smith as "a vehicle for a scheme" to increase exposure levels beyond authorized limits. It is specifically denied that Smith was managing "this segment separately" or that Smith was part of any scheme to increase exposure levels beyond authorized limits. Smith executed trades as directed by portfolio managers. He was not involved in marketing AIM, was not an investment advisor to the portfolio and he had no primary client contact. As such, Smith has insufficient information and knowledge to admit or deny any remaining allegations contained in paragraph 19 of the Complaint. Therefore, all allegations contained in paragraph 19 of the Complaint are denied.

20. Denied as stated. It is admitted only that Smith executed trades as part of his responsibility at AIM and as directed by founding partners. Smith was neither a

marketing of AIM nor an investment advisor to the portfolio and he had no primary client contact. It is specifically denied that Smith knowingly or recklessly executed unauthorized trades. Reports that monitored daily exposure levels would be insufficient to determine whether a trade was "unauthorized". Strict proof to the contrary is demanded. The remaining allegations contained in paragraph 20 of the Complaint, if any, are denied and strict proof is demanded.

21. Denied as stated. It is admitted only that clients typically received notice of daily trades. It is specifically denied that any of Smith's activities were intended to prevent clients from discovering the unauthorized trading. Moreover, a number of trades described in the allegations were made without Smith's knowledge or participation while he was out of the office during the month of June 2002. All remaining allegations contained in paragraph 21 of the Complaint are denied and strict proof to the contrary is demanded.

22. Denied as stated. It is admitted only that on April 21, 2002, the S&P 500 Composite Index closed at 1,146 and then declined over the next four months until reaching 819 on July 22, 2002. The majority of the losses described in the Complaint involved trades executed in June of 2002 which occurred without Smith's knowledge or participation. All other allegations contained in paragraph 22 are denied and strict proof is demanded.

23. Denied as stated. It is admitted only that Smith always attempted to maximize profits and minimize losses for clients on the trades he was directed to execute. The remaining allegations contained in paragraph 23 of the Complaint are denied and strict proof is demanded.

24. Denied as stated. It is specifically denied that Smith was involved in "unauthorized trading" at any time. All other allegations contained in paragraph 24 of the Complaint are denied and strict proof is demanded.

25. Denied as stated. It is admitted only that declines in portfolio values occurred. The remaining allegations contained in paragraph 25 of the Complaint are denied and strict proof is demanded.

26. Denied as stated. Moreover, Smith had no primary client contact during this or any other period of time while he worked for AIM. He was not a marketer of AIM and he was not an investment advisor to the portfolio. Strict proof is demanded.

27. Denied. It is specifically denied that Smith had any knowledge or involvement in the preparation of material misleading monthly account statements. Strict proof to the contrary is demanded.

28. Denied as stated. It is specifically denied that Smith had any involvement in material and misleading monthly statements or that Smith and Allen alone prepared the monthly account statements. Based upon information and belief, another individual was primarily responsible for the preparation of monthly statements. Strict proof to the contrary is demanded.

29. Denied.

30. Denied.

31. Denied. It is specifically denied that Smith knowingly or recklessly mislead AIM clients or perpetrated a scheme to use excessive exposure in contravention of client agreements to generate additional trading profits and management fees. It is specifically denied that Smith knowingly or recklessly acted with specific intent to

deceive or mislead AIM clients. Moreover, Smith was neither a marketer of AIM products nor an investment advisor to the portfolio nor did he have any primary client contact. Therefore, all allegations contained in paragraph 31 of the Complaint are denied and strict proof demanded.

32. Defendant Smith is advised that no response is necessary to paragraph 32 of the Complaint. To the extent a response is deemed necessary, Smith hereby realleges every response to paragraph in Complaint as set forth in paragraph 1 - 31 of Answer as if fully referenced here.

33. Denied.

34. Denied.

35. Defendant Smith is advised that no response is necessary to paragraph 35 of the Complaint. To the extent a response is deemed necessary, Smith hereby realleges every response to paragraph in Complaint as set forth in paragraph 1 - 34 of the Answer as if fully referenced here.

36. Denied as stated. It is specifically denied that Smith acted as an investment advisor. The remaining allegations contained in paragraph 36 of the Complaint state conclusions of law to which no response is necessary. To the extent a response is deemed necessary, the allegations are denied and strict proof demanded.

37. Denied.

38. Denied.

## AFFIRMATIVE DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's Complaint is barred by the doctrine of res judicata.

3. This Court lacks subject matter jurisdiction over Plaintiff's Complaint.

4. Plaintiff's Complaint is barred by the doctrine of laches.

5. Plaintiff's Complaint should be dismissed for failure to join an indispensable party.

6. Complaint is barred by the statute of limitations.

WHEREFORE, having fully answered, Defendant James Barlow Smith requests that judgment be entered against the Plaintiff, including costs and attorney fees.

Respectfully submitted,

OGG, CORDES, MURPHY & IGNELZI, L.L.P.

Philip A. Ignelzi, Esquire
PA. I.D. # 34286
Michael A. Murphy, Esquire
PA. I.D. # 55846
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
412-471-8500
Firm I.D. # 568
Attorney for Defendant, James Barlow Smith

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer and Affirmative Defenses was served upon the following counsel by first class mail, postage prepaid, this 7th day of June, 2005:

Arthur S. Gabinet
Christina Rainville
Colleen K. Lynch
Securities & Exchange Commission
Mellon Independence Center
701 Market Street
Suite 2000
Philadelphia, PA 19106

Philip A. Ignelzi, Esquire
Ogg, Cordes, Murphy & Ignelzi, LLP
PA. I.D. # 34286
Michael A. Murphy, Esquire
PA. I.D. # 55846
245 Fort Pitt Boulevard
Pittsburgh, PA 15222
412-471-8500
Firm I.D. # 568
Attorney for Defendant, James Barlow Smith